**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

AIR EVAC EMS., INC.,

                Plaintiff,

v.                              CIVIL ACTION NO.  2:21-cv-00310

JAMES A. DODRILL,

                Defendant.

*"It's deja vu all over again."*
\- Yogi Berra

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiff Air Evac EMS, Inc.'s ("Plaintiff" or "Air Evac")
Motion for Preliminary Injunction ("Plaintiff's Motion").  (ECF No. 4.)  For the reasons discussed
more fully below, the Court **GRANTS** Plaintiff's Motion.

*I.     Background*

Air Evac is an emergency air ambulance provider that operates throughout the United
States, including in West Virginia.  It is a federally regulated air carrier and provides transport for
injured or sick individuals when dispatched by first responders, hospitals, or physicians.  Air Evac
performs this service without regard to a patient's ability to pay or insurance status.  As part of its
business model, Air Evac "offers a prepaid, discounted Membership Program to both individual
West Virginia residents and to West Virginia businesses and municipalities."  (ECF No. 1 at ¶ 4.)
This prepaid Membership Program costs less than $100 a year for an individual and their
household.  *Id.*  Additionally, businesses and municipalities can also purchase memberships on

behalf of their employees or citizens. *Id.* The benefit of this program is that those with a membership who are transported by Air Evac (or its sister companies) are not responsible for any portions of their bill that is not covered by insurance.[1] This Membership Program ensures that a member does not face any out-of-pocket costs if transported by Air Evac or one of its affiliated providers. (ECF No. 5 at p. 7.) Air Evac describes its Membership Program as a

> debt cancellation agreement: in exchange for the prepaid membership fee, if a member is transported by Air Evac (or an Air Evac company), then Air Evac (or the Air Evac sister company that is the transporting provider) will cancel the portion of the bill that would otherwise be the patient's out-of-pocket responsibility, including co-pay, deductible, or balance that is not covered by the patient's insurance.

(ECF No. 1 at ¶ 4.)

Air Evac now comes before this Court seeking a preliminary injunction to enjoin HB 2776 from taking effect as scheduled on July 9, 2021. This is not Air Evac's first appearance before the court. Prior to this current action, Air Evac has been involved in at least two lawsuits in the Southern District of West Virginia, in which it sought to either limit or enjoin the enforcement of certain legislation or regulations. To set the scene for this current action, the Court will first describe these prior actions and will then provide the background of the current matter.

*A.    Air Evac EMS, Inc. v. Cheatham et all, Civil Action No. 2:16-cv-05224*[2]

On June 9, 2016—Plaintiff Air Evac EMS, Inc. ("Plaintiff" or "Air Evac") filed a Complaint for Declaratory and Injunctive Relief in the Southern District of West Virginia. (ECF No. 1.) The named defendants in this case were: Ted Cheatham, in his capacity as Director of the

---

[1] This only applies to the bill or costs accrued in relation to Air Evac's transportation and services. To the best of the Court's knowledge, this is not applicable to any other medical costs or fees that a patient might incur during an incident or illness in which Air Evac is dispatched.

[2] The citations to ECF Nos. in this subsection refer to the ECF Nos. and documents filed in *Air Evac EMS, Inc. v. Cheatham,* Civil Action No 2:16-cv-05524—a case in the Southern District of West Virginia.

Public Employees Insurance Agency; Mary Jane Pickens, Joshua Sword, James W. Dailey, II, Troy Giatras, Elaine A. Harris, William Ihlenfeld, Brian Donat, William Milam, and Michael Smith, in their capacities as members of the Public Employees Insurance Agency's Finance Board; and Michael D. Riley, in his capacity as the West Virginia Insurance Commissioner (collectively, "Defendants").

Air Evac's Complaint primarily sought to limit the reach of House Bill 4315 ("HB 4315"), which was passed during West Virginia's 2016 Legislative Session. HB 4315 capped "the amount that PEIA pays Air Evac when it transports patients that are covered by PEIA insurance." (ECF Nos. 1 at p. 2; 27 at p. 2.) HB 4315 also eliminated Air Evac's ability to recover *any* payment from PEIA when it transports PEIA patients that participate in Air Evac's membership program. (ECF Nos. 1 at p. 2; 27 at p. 2.) The case also sought to address the limits placed on Air Evac's reimbursement when it transports patients covered by workers' compensation and the fee schedule established by the Office of the Insurance Commissioner for these patients. (ECF Nos. 1 at p. 2; 27 at p. 2.) Apart from HB 4315, Air Evac further alleged that "the PEIA Finance Board, pursuant to the fee schedule it adopts, cap[ped] the amount PEIA reimbursed Air Evac for providing life-saving transportation to its participants"—which was impermissible due to the Airline Deregulation Act of 1978's ("ADA") preemption of this type of regulation.

In sum, Air Evac sought "a declaration that the [ADA] expressly preempts these laws and regulations" and "a declaration that HB 4315 violates the Contract Clause of the U.S. Constitution because it substantially impairs Air Evac's contractual rights, and is thus void and unenforceable." (ECF Nos. 1 at p. 2; 27 at p. 2.) Air Evac also requested that the Court permanently enjoin Defendants from enforcing the West Virginia Code sections and accompanying regulations that

establish and limit the price or rate of Air Evac's services.  (ECF Nos. 1 at pp. 26-27; 27 at pp. 26-27.)

On August 12, 2016, Defendants filed a Motion to Dismiss Complaint, in which they argued that Air Evac's Complaint should be dismissed for failure to state a claim. (ECF No. 25.)[3] Then, on August 25, 2016, Air Evac filed an Amended Complaint, (ECF No. 27). This Amended Complaint contained six claims for relief.  (ECF No. 27.)  Counts I and II sought declarations that the two subsections of W. Va. Code § 5-16-8a were each preempted by the ADA because they established and limited the price of Air Evac's services. (ECF No. 27.)  Count III alleged that the regulation of Air Evac's subscription agreement violated the Contracts Clause of the United States Constitution and sought declaratory and injunctive relief.  (ECF No. 27.) Counts IV and V sought a declaration that the PIEA and OIC fees schedules were preempted by the ADA.[4]  (ECF No. 27.) Air Evac's sixth claim was pled in the alternative: if the Court chose not to invalidate W. Va. Code § 5-16-8a and the fee schedules, then Air Evac asked that the Court invalidate the prohibition on balance billing as preempted by the ADA.  (ECF No. 27.)

On September 15, 2016, Defendants filed an Amended Motion to Dismiss Complaint, (ECF No. 36).  The Court denied Defendants' Amended Motion to Dismiss in May 2017.  (ECF No. 87.)  Later that month, on May 22, 2017, Defendants filed their Motion for Summary Judgment. (ECF No. 88.)  Air Evac also filed its own Motion for Summary Judgment.  (ECF No. 90.)

Ultimately, this Court granted Plaintiff's Motion for Summary Judgment in part and denied

---

[3] The Court ultimately denied this Motion to Dismiss as moot on October 17, 2016.  (ECF No. 46.)
[4] Claim IV sought injunctive relief against the PEIA Finance Board, and Claim V sought injunctive relief against Defendant Riley.

it in part and denied Defendants' Motion for Summary Judgment in its entirety. (ECF No. 111.) In partially granting Plaintiff's Motion for Summary Judgment, this Court found that "Air Evac's practice of providing emergency air ambulance services indiscriminately when called upon by third party professionals, together with its certification as an air carrier by the DOT and court cases affirming this status, qualify Air Evac as an air carrier under the ADA." (ECF No. 111 at 11.) Next, this Court determined that the statute and regulations at issue in the Amended Complaint sufficiently "relate to" the price of an air carrier. (ECF No. 111 at 13.) Finally, the Court found that "the challenged laws—including the mandatory fee schedule and the prohibition of balance-billing—have the 'force and effect of the law[,]" which resulted in the laws being preempted by the ADA. (ECF No. 111 at 17.) As the ADA preemption served as an adequate basis to invalidate the laws at issue, the Court declined to examine Count III: Air Evac's Contracts Clause challenge. (ECF No. 111 at 19.) Based on the above reasoning, this Court granted Plaintiff's Motion for Summary Judgment as to Counts I, II, IV, and V and denied the Motion as to Count III. Defendants appealed this ruling to the Fourth Circuit Court of Appeals, and that Court affirmed this Court's findings and rulings. *See Air Evac EMS, Inc. v. Cheatham*, 910 F.3d 751 (4th Cir. 2018).

B.    *Air Evac EMS, Inc. v. Dodrill, Civil Action No. 2:21-cv-00105[5] ("Dodrill I")*

In this recent case, Plaintiff Air Evac alleged that in 2019 Defendant Dodrill and the Office of the Insurance Commissioner ("OIC") "began exploring how to regulate Air Evac's Membership Program out of existence through a novel application of the West Virginia Insurance Code"—

---

[5] The citations to ECF Nos. in this subsection refer to the ECF Nos. and documents filed in *Air Evac EMS, Inc. v. Dodrill,* Civil Action No 2:21-cv-00105—a case before the Honorable Irene C. Berger, United States District Judge for the Southern District of West Virginia.

despite the ADA and the Court's prior rulings in *Cheatham*. (ECF No. 4 at p. 7.) Air Evac stated that, for more than a year, it cooperated in good faith with OIC's information-gathering efforts while repeatedly warning OIC that the ADA preempts any effort by West Virginia to regulate the Membership Program." *Id.*

In an effort to push back on OIC and Dodrill's regulatory strategy, on February 10, 2021, Air Evac filed a lawsuit against Defendant James Dodrill ("Defendant Dodrill" or "West Virginia Insurance Commissioner"), in his official capacity as West Virginia Insurance Commissioner. (ECF No. 1.) The Complaint listed four specific prayers for relief and asked the Court to:

1. Issue a temporary restraining order and—after a hearing—a preliminary injunction barring Defendant Dodrill from enforcing W. Va. Code §§ 33-1-1; 33-3-1, and 33-44-1 *et seq.* against Air Evac;

2. Issue a judgment declaring that the ADA preempts W. Va. Code §§ 33-1-1; 33-3-1, and 33-44-1 *et seq.*, as applied to other ambulance providers;

3. Permanently enjoin Defendant Dodrill from enforcing W. Va. Code §§ 33-1-1; 33-3-1, and 33-44-1 *et seq.*, against air ambulance providers because they are preempted by the ADA; [and]

4. Grant other and further relief as this Court may deem just and appropriate.

(ECF No. 1 at p. 30.) At the same time Plaintiff filed its Complaint, it also filed a Motion for Temporary Restraining Order and Order to Show Cause Regarding a Preliminary Injunction ("Plaintiff's Motion for a TRO"). (ECF No. 3.) Plaintiff's Motion for a TRO sought "emergency relief to stop West Virginia Insurance Commissioner [ ] from imminently subjecting Air Evac to an enforcement action, in violation of Air Evac's rights as a federally-regulated air carrier." (ECF

No. 4 at 7.)

In this Motion, Air Evac argued that the Airline Deregulation Act of 1978 ("ADA") preempts state laws that relate to Air Evac's prices and services. (ECF No. 4.) Air Evac stated that it was likely to succeed on the merits because it is an "air carrier" for the purposes of ADA preemption; the Licensing Laws that are part of the OIC's new regulatory strategy have the "force and effect of law"; and that these Licensing Laws "relate to" Air Evac's prices and services. (ECF No. 4 at pp. 16-19.) Air Evac explained away OIC's argument that the Licensing Laws "may be saved from ADA preemptions by the McCarren-Ferguson Act" ("MFA") by arguing that the MFA has been displaced by the ADA and that courts have held that "prepaid medical service plans and debt-cancellation agreements are not the 'business of insurance' under the MFA in the first place." (ECF No. 4 at pp 19-20.)

On March 1, 2021, the Court granted Air Evac's Motion for a TRO. *Id.* The Court found that Air Evac was likely to succeed on the merits and that the remaining three factors supported the issuance of a preliminary injunction. *Id.* More specifically, the Court found that the "effort to regulate Air Evac's Membership Program clearly relates to a price of an air carrier providing air transportation", *Id.* at p. 16, and that "Air Evac is likely to prevail in demonstrating that its Membership Program is not insurance, and therefore that any state regulation of it is preempted by the ADA.", *Id.* at p. 20.

On March 16, 2021, Defendant Dodrill filed a Notice of Interlocutory Appeal, in which he provided the Court with notice that he appealed the Court's grant of Air Evac's Motion for TRO. (ECF No. 24.) At the same time, Defendant Dodrill also filed a Motion to Stay Pending Appeal. (ECF No. 25.) On March 31, 2021, the Court granted Defendant's Motion to Stay Pending Appeal

and removed the case from the Court's active docket pending the resolution of the interlocutory appeal. (ECF No. 29.) The appeal has been docketed in the Fourth Circuit, but the Fourth Circuit has not yet ruled on the interlocutory appeal.

## C.    *The Present Case*

The instant case arises out of a challenge to legislation recently passed by the West Virginia Legislature and signed by the Governor: House Bill 2776 ("HB 2776"). HB 2776 adds a new article—Article 11B—to the West Virginia Code. This new article specifically designates air ambulance service providers, and any affiliated entity who solicits air ambulance membership subscriptions, accepts membership applications, or changes membership fees, as being "in the business of insurance." (ECF No. 1-1 at Ex. B.) This new designation requires Air Evac "to obtain a license in order to offer the program in West Virginia—on pain of penalties." (ECF No. 5 at p. 2.) In application, this designation would give the Office of the Insurance Commissioner ("OIC") the power to regulate Air Evac's services and membership program as if it were insurance. It appears to apply to no other entity but Air Evac. This bill is scheduled to take effect on July 9, 2021.

On May 20, 2021, Plaintiff filed its Complaint, in which it seeks declaratory and injunctive relief based on preemption under the 1987 Airline Deregulation Act ("ADA"). (ECF No. 1.) On that same day, Plaintiff also filed a Motion for Preliminary Injunction. (ECF No. 4.) Plaintiff's Motion seeks "a preliminary injunction to stop West Virginia Insurance Commissioner James Dodrill from applying and enforcing state insurance laws against Air Evac[,]" (ECF No. 5 at 7), and specifically "requests that this Court issue a preliminary injunction barring Defendant from enforcing the Membership Laws (HB 2776, *to be codified at* W. Va. § 33-11B-1;

W. Va. Code § 33-3-1; and W. Va. Code § 33-44-1 *et seq.*), against Air Evac during this case." (ECF No. 5 at 26.) Defendant responded to Plaintiff's Motion on June 8, 2021. (ECF No. 15.) Then, on June 11, 2021, this Court heard oral arguments on Plaintiff's Motion. Plaintiff's Motion is now ripe for adjudication.

## II. *Legal Standard*

"Rule 65 of the Federal Rules of Civil Procedure provides for the issuance of preliminary injunctions as a means of preventing harm to one or more of the parties before the court can fully adjudicate the claims in dispute." *Fred Hutchinson Cancer Research Ctr. v. BioPet Vet Lab, Inc.*, 768 F. Supp. 2d 872, 874 (E.D. Va. 2011). "A preliminary injunction is an extraordinary remedy afforded prior to trial at the discretion of the district court that grants relief *pendente lite* of the type available after the trial." *Real Truth About Obama, Inc. v. FEC* (*Real Truth* I), 575 F.3d 342, 345 (4th Cir. 2009), *vacated on other grounds*, 130 S. Ct. 2371 (2010), *reissued as to Parts I & II, Real Truth About Obama, Inc. v. FEC*, 607 F.3d 355 (4th Cir. 2010).

"The traditional office of a preliminary injunction is to protect the status quo and to prevent irreparable harm during the pendency of a lawsuit ultimately to preserve the court's ability to render a meaningful judgment on the merits." *United States v. South Carolina*, 720 F.3d 518, 524 (4th Cir. 2013) (quoting *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003)); *see also Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) ("The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held."). "Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *University of Texas*

*v. Camenisch*, 451 U.S. 390, 395 (1981). "A party thus is not required to prove his case in full at a preliminary-injunction hearing[,] and the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits." *Id.* (citations omitted).

"The Supreme Court established the standard for imposing a preliminary injunction in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 ... (2008)." *Pashby v. Delia*, 709 F.3d 307, 320 (4th Cir. 2013). "That case requires parties seeking preliminary injunctions to demonstrate that (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm, (3) the balance of hardships tips in their favor, and (4) the injunction is in the public interest." *Id.* (citing *Winter*, 555 U.S. at 20). "[C]ourts considering whether to impose preliminary injunctions must separately consider each *Winter* factor," *Id.* at 320, and "[a]ll four elements must be established by a 'clear showing' before the injunction will issue," *Imagine Medispa, LLC v. Transformations, Inc.*, 999 F. Supp. 2d 862, 868 (S.D. W. Va. 2014) (quoting *Real Truth* I, 575 F.3d at 346).

"The party seeking the injunction bears the burden of providing a sufficient factual basis" for issuance of an injunction "by offering some proof beyond the unverified allegations in the pleadings." *Id.* at 868–69 (citations omitted); *see generally Imagine Medispa*, 999 F. Supp. 2d at 869 ("[T]he weight to be accorded affidavit testimony is within the discretion of the court, and statements based on belief rather than personal knowledge may be discounted." (citation omitted)). Preliminary injunctions involve "the exercise of very far-reaching power" and are "to be granted only sparingly and in limited circumstances." *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001) (quoting *DirexIsrael, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 816 (4th Cir. 1991)).

*III.    Discussion*

Although a preliminary injunction is an extraordinary remedy, Air Evac provides a clear showing that all four factors required for the issuance of a preliminary injunction are satisfied. Each factor will be discussed in turn below.

*A.  Plaintiff's Likelihood of Success on the Merits*

First, this Court believes that Plaintiff has shown it is likely to succeed on the merits. Plaintiff seeks a preliminary injunction that enjoins Defendant from enforcing HB 2776 and its related West Virginia Code sections during the pendency of this case as Plaintiff contends HB 2776 is preempted by the ADA. Defendant counters this by contending that the ADA preemption is negated by what is known as reverse preemption through the MFA. Plaintiff disagrees with Defendant's analysis that the MFA is applicable here. As discussed in more detail herein, the Court agrees with Plaintiff and believes Plaintiff is likely to succeed on the merits.

*1.  ADA Preemption*

The ADA expressly preempts state efforts to regulate the prices, routes, and services of certain air carriers. *See* 49 U.S.C. § 41713(b)(1). Prior to the ADA, two layers of regulation and oversight controlled the airline industry. "The law at [that] time contemplated dual regulatory regimes and collaboration between federal and state governments." *Air Evac EMS, Inc. v. Cheatham*, 910 F.3d 751, 755 (4th Cir. 2018) (citing Federal Aviation Act of 1958, Pub. L. No. 85-726, § 302(k); H.R. Rep. No. 85-2360, at 14 (1958)). Then, in 1978, Congress enacted the ADA as an effort to encourage a reliance on free market forces, remove entry barriers, and allow prices to respond to consumer demand. *See Cheatham*, 910 F.3d at 755. A cornerstone of this deregulatory backdrop of the ADA is that, after its enactment, air travel was no longer subject to

two layers of regulation. *Id.* The ADA makes clear that any efforts by a state to regulate the prices, routes, or services of air travel is preempted by federal regulation and oversight: "[A] State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart." 49 U.S.C. § 41713(b)(1); *see Cheatham*, 910 F.3d at 755 (citing *See* 49 U.S.C. §§ 40101(a), 40109(a)-(b), 41102, 44103 (2012)).

When examining whether HB 2776 is preempted by the ADA, the Court must first determine whether Air Evac is an air ambulance carrier under the ADA. Here, there is no doubt that Air Evac falls within the definition of an air ambulance. In fact, this Court held as much in *Cheatham v. Air Evac EMS, Inc.v. Cheatham*, 2017 WL 4765966, Civil Action No. 2:16-c-05224, at *5-6 (S.D. W.Va. Oct. 20, 2017). The Fourth Circuit affirmed this conclusion. *Cheatham*, 910 F.3d 715 (4th Cir. 2018).

Next, the Court must decide whether HB 2776 has the "force and effect of law". The Court finds that, once enacted, HB 2776 will have the force and effect of law as the contents of HB 2776 would become part of the West Virginia Code on its effective date. *Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 282 (2014) (noting that common-law rules, statutes, and regulations all have the force and effect of law under this ADA preemption provision.) Therefore, without additional discussion, the Court now turns to whether HB 2776 relates to the rates, services, or routes of Air Evac. The Court concludes that it does.

Courts construe this "relating to" clause broadly. *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992) (holding that state truth-in-advertising laws are preempted by the ADA). More specifically, the Supreme Court of the United States defines the "relating to"

language in the ADA preemption clause as "having a connection with, or reference to, airline 'rates, routes, or services.'" *See, e.g., American Airlines, Inc. v. Wolens*, 513 U.S. 219, 223 (1995) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992)). The purpose of this preemption is to "stop[] States from imposing their own substantive standards with respect to rates, routes, or services" of air carriers. *Wolens*, 513 U.S. at 232. Accordingly, if HB 2776 broadly relates to airline rates, routes, or services—then it is preempted by the ADA. *See Guardian Flight,* 991 F.3d 916 (8th Cir. 2021); *Scarlett v. Air Methods Corp.*, 922 F.3d 1053 (10th Cir. 2019); *Cheatham*, 910 F.3d 751; *Ferrell v. Air Evac EMS, Inc.*, 900 F.3d 602 (8th Cir. 2018); *Bailey v. Rocky Mtn. Holdings, LLC*, 889 F.3d 1259 (11th Cir. 2018); *EagleMed, LLC v. Cox*, 868 F.3d 893 (10th Cir. 2017); *Schneberger v. Air Evac EMS, Inc.*, 749 F. App'x 670 (10th Cir. 2018); *Valley Med Flight, Inc. v. Dwelle*, 171 F. Supp. 3d 930 (D.N.D. 2016); *Dodrill I*, 2021 WL 781679; *Chanze v. Air Evac EMS, Inc.*, 2018 WL 5723947 (N.D. W. Va. Nov. 1, 2018) (all recognizing that the ADA preemption applies to air ambulances and that any state law that regulates the rates, services, or routes of an air ambulance is preempted by the ADA).[6]

HB 2776 seeks to legislatively define Air Evac and its services as "being in the business of insurance" in order to subject Air Evac to state-imposed regulations, fines, and licensing requirements that would exist in addition to the federal regulations with which Air Evac is already required to comply. Air Evac states that if HB 2776 is permitted to become law then the OIC can impose additional licensing requirements on it—which can include maintaining "a minimum capital and surplus requirements; submitting copies of the applicant's charter, bylaws, and annual

---

[6] The exception to this general premise is that "the ADA permits state-law-based court adjudication of routine breach-of-contract claims," "affording relief to a party who claims and proves that an airline dishonored a term the airline itself stipulated." *Am. Airlines, Inc. v. Wolens,* 513 U.S. 219, 232-33 (1995).

financial statement to the OIC; filing annual financial statements under oath with OIC, including audited financial reports; modifying insurance policies to include standard language required by law; and submitting to OIC's regulatory authority of insurance rates." (ECF No. 5 at p. 14.) *See also* W. Va. Code §§ 33-3-4b, 33-3-4, 33-3-14, 33-3-1 *et seq.,* 33-6-1 *et seq.*, and 33-20-1 *et seq.* Under HB 2776, if Air Evac fails to comply with these (or any other) additional requirements put forth by the OIC—then it could be subject to civil penalties, criminal penalties, cease-and-desist orders, and injunctive relief. *See* W. Va. Code §§ 33-11-7, 33-44-6, 33-44-7(a), 33-4-8, 33-44-9.

Courts have examined the bounds of this "related to" language in a variety of circumstances. For example, in *Cheatham*, the Fourth Circuit considered whether the ADA preempts the OIC's set reimbursement rates for air ambulance services for insurers within the state workers' compensation system and found that the "related to" language of the ADA did, in fact, preempt this type of regulation. 910 F.3d 751. The Fourth Circuit also found that the ADA preempts a state provision that sought to eliminate any payment by PEIA for employees who were enrolled in an air ambulance subscription program. *Id.* In coming to these conclusions, the Court emphasized that the "['related to'] provision clearly covers more than just a state's attempt to regulate the price of a ticket" and that "[i]t is enough that the state law at issue has 'forbidden significant effect' on prices, even without referencing them directly." *Id.* at 767 (citing *Morales*, 504 U.S. at 388).

In a similarly situated case, *Dodrill I*, the Court found that the ADA preempted the state's efforts to regulate Air Evac's Membership Program as said program "clearly relates to a price of an air carrier providing air transportation." *Dodrill I*, No. 2:21-cv-00105, 2021 WL 781679, at *6 (S.D. W. Va. March 1, 2021), *appeal docketed*, No. 21-1301 (4th Cir.). The Court's rationale was

based on the fact that Membership fees help fund operating costs for Air Evac and that "limiting the program would both limit a source of revenue that contributes to the cost of providing flights and would impact the charges levied on consumers." *Id.* at p. 6. The Court in *Dodrill I* ultimately issued a preliminary injunction as it concluded that the state's attempts to regulate Air Evac's operation of its Membership Program is preempted under the "relating to" language of the ADA.[7]

While merely persuasive authority, a third case informs the Court's decision here— *Guardian Flight LLC v. Godfread*, 991 F.3d 916 (8th Cir. 2021). In relevant part, *Guardian Flight* found that the ADA preempts a North Dakota state regulatory provision that prohibits "air ambulance providers from entering into price-establishing subscription agreements with consumers" as this provision is clearly "related to" and has a "connection with" the price that air ambulance providers charge for their services. *Id.* at p. 921. The provision at issue prohibited air ambulance subscription agreements in North Dakota and authorized a civil fine of up to $10,000 for any violations of that prohibition. *Id.* at 920. Even though this prohibition did not expressly state that it sought to or was regulating the price of air ambulance providers, the Eighth Circuit found that prohibiting air ambulance membership services was sufficiently related to the regulation of air ambulance pricing to necessitate a finding that the provision was preempted by the ADA. *See id.* at 920-21. This analysis follows *Cheatham*, *Dodrill I,* and the Supreme Court's rationale in *Morales.*

Accordingly, at this juncture, it appears that the OIC's attempt to classify Air Evac's services in the state of West Virginia as "insurance" qualifies, under the broad language of the

---

[7] As part of its issuance of a preliminary injunction, the Court also found that "Air Evac is likely to succeed on its [ ] theory that the Defendant's enforcement threat against the Membership Program does not involve regulation of the business of insurance, within the meaning of the MFA." This prong of the preliminary injunction analysis will be discussed in Subsection III(A)(2) below.

ADA preemption, as relating to the regulation of Air Evac's services, and potentially even its rates. Essentially, by unilaterally and legislatively defining Air Evac's services and business model as "insurance", HB 2776 seeks to add layers of licensing requirements and regulations to an air ambulance company that has provided essential services to the residents of West Virginia for years.[8]  The regulatory scheme promulgated by HB 2776 seems to exist only because West Virginia is attempting to limit, stop, or otherwise impermissibly regulate Air Evac's Membership Program, which is an essential part of pricing model for Air Evac's services.  HB 2776 seeks to impose state-level regulations on what services, and potentially even what prices, air ambulances can offer patients and how those services can or cannot be structured.  This additional level of regulation on air ambulance services conflicts with and is preempted by the ADA.

Moreover, a primary purpose of the ADA was to strip down the two levels of regulations that air carriers were subject to under the FAA in order to encourage a reliance on free market forces, remove entry barriers, and allow prices to respond to consumer demand.  *See Cheatham*, 910 F.3d at 755.  In enacting the ADA, Congress deliberately chose to remove the dual layers of regulations and requirements on air carriers and determined that the federal government is better positioned than the states to be the exclusive authority on how air carriers are to be monitored, regulated, and licensed in the United States—particularly when it comes to the rates, services, and routes of those air carriers.  Thus, HB 2776 is in direct conflict with both the spirit of the ADA and the express language in the ADA that preempts states from enacting laws that seek to regulate the services and rates of air ambulance providers. Adding these additional state-level licensing

---

[8] While Defendant claims it seeks to impose these additional regulations and licensing requirements on Air Evac due, in part, to complaints received by the OIC regarding Air Evac and its Membership Program—the Court has not yet seen evidence to support this and, thus, disregards this claim for the purpose of its analysis of Plaintiff's Motion for Preliminary Injunction.

requirements appears to amount to the regulation of air ambulance services—particularly as they pertain to the structure of the Membership Program. Thus, the Court finds that Plaintiff has satisfied its burden of showing that HB 2776 is preempted under the ADA.

### 2. *Reverse Preemption under the MFA*

There is, however, an exception to this general rule that states cannot enact laws to regulate the services, rates, or routes of air carriers: reverse preemption. If reverse preemption under the MFA is applicable, then it may give the OIC the power to regulate Air Evac and its Membership Program as insurance in West Virginia by shielding HB 2776 from the ADA. To determine whether reverse preemption under the MFA is applicable, the Court first looks to the relevant language from the MFA. The MFA provides: "No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business." 15 U.S.C. § 1012(b).

The question here is whether HB 2776 was enacted "for the purpose of regulating the business of insurance". The crux of this analysis is whether legislation that defines an air ambulance service provider as being in the business of insurance is an acceptable, albeit roundabout, way for the OIC to obtain regulatory powers over an air ambulance company with a membership program. Defendant makes the argument that the legislature can and define "the business of insurance" as it sees fit and, thus, it is wholly within its power to define Air Evac's business model as insurance. (*See* ECF Nos. 15, 18.) More specifically, Defendant contends that Air Evac's business model falls under the umbrella of insurance due to the inherent risk sharing nature of its program. (*See* ECF Nos. 15, 18.) Plaintiff disagrees with these contentions and proffers that its Membership Program is merely a debt cancellation agreement (not insurance),

17

that not all risk sharing programs rise to the level of insurance, and that a state legislature cannot evade a federal statute "by deeming air-ambulance memberships 'insurance' under state law." (*See* ECF Nos. 5, 18.)

For the purpose of determining Plaintiff's likelihood of success on the merits, the Court believes that Air Evac is likely to prevail in demonstrating that neither it nor its Membership Program is insurance. HB 2776 appears to be an attempt to circumvent the ADA's preemption and bring all of Air Evac's air ambulance services under the OIC's purview through the addition of a new article—Article 11B—which defines Air Evac's Membership Program as "being in the business of insurance." However, simply saying the sky is green does not make the sky green and simply calling something insurance does not make it insurance. The Court remains unconvinced that Air Evac's business model and Membership Program can be legislatively deemed insurance to provide a pathway for the OIC to regulate certain air ambulance providers and evade express preemption under the ADA.

Rather, the Court is guided by the Supreme Court's "three criteria relevant in determining whether a particular practice is part of the 'business of insurance'" to make the ultimate determination regarding the applicability of the MFA's reverse preemption to HB 2776. *Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 128 (1982) (addressing the MFA provision that is applicable to antitrust laws). The first criteria requires the Court to examine "whether the practice has the effect of transferring or spreading policyholder risk." *Id.* The second criteria requires an analysis of "whether the practice is an integral part of the policy relationship between the insurer and the insured." *Id.* The third and final criteria has the Court consider "whether the practice is limited to entities within the insurance industry." *Id.* "[T]he focus of the McCarran-Ferguson

[Act] is upon the relationship between the insurance company and the policy holders." *U.S. Dep't of Treasury v. Fabe*, 508 U.S. 491, 501 (1993). Moreover, as the Supreme Court also notes, "the scope of laws 'enacted for the purpose of regulating the business of insurance' consists of laws that possess the 'end, intention, or aim' of adjusting, managing or controlling the business of insurance,' and is broader than the 'business of insurance' itself, resulting in broader construction of the term for the purposes of the antitrust provision of the MFA than for the preemption provision." *Dodrill I*, No. 2:21-cv-00105, 2021 WL 781679, at *18. (quoting *Fabe*, 508 U.S. at 505). Bearing in mind the focus of the MFA and the construction of the same, the Court will now address the three criteria for determining whether Air Evac's Membership Program qualifies as being in the business of insurance.

First, the Membership Program does involve the sharing of risk between members and Air Evac because:

> in exchange for the prepaid membership fee, if a member is transported by Air Evac (or an Air Evac company), then Air Evac (or the Air Evac sister company that is the transporting provider) will cancel the portion of the bill that would otherwise be the patient's out-of-pocket responsibility, including co-pay, deductible, or balance that is not covered by the patient's insurance.

(ECF No. 1 at ¶ 4.) This setup inherently involves risk for both Air Evac and the member of the Membership Program. The member risks paying the annual membership fee but then never using Air Evac's services while Air Evac risks the possibility that a member uses the Air Evac services and that the cost of those services is much higher than the annual membership fee. The Court recognizes that while all insurance involves risk sharing—not all risk sharing amounts to insurance. For example, there is risk sharing in a situation where a car wash offers a $20 monthly membership for unlimited car washes—but the fact that the risk is shared between the patron and

the car wash does not convert the car wash membership program into insurance nor could this setup permit the OIC to unilaterally define this car wash membership as insurance to subject it to OIC's regulations. Thus, whether Air Evac's Membership Program represents enough risk sharing to satisfy this factor is debatable at best. However, despite Defendant's emphasis on this first criteria, there are two remaining criteria the Court must examine.

The second factor asks the Court to examine whether the regulated practice is an integral part of the policy relationship. At the outset, the Court notes that there is nothing called a "policy" here. Moreover, even if Air Evac's Membership Program could somehow be called a "policy"[9], it is not immediately apparent what precise oversight and regulation the OIC seeks to impose on this program and business model as HB 2776 simply defines Air Evac's program as the "business of insurance," which opens Air Evac up to a variety of potential regulations from the OIC. Beyond this, Air Evac is not an insurance company—it is an air ambulance company. Based on this analysis, the Court cannot find that Air Evac's membership program meets the second factor for the "business of insurance".

At this juncture, while the Court's clarity regarding the second factor's impact is less certain, the third factor—whether the practice is limited to entities within the insurance industry— supports a finding that Air Evac's Membership Program is not insurance and is dispositive to this analysis. As the Court recognized in *Dodrill I,* there are countless industries outside of the insurance industry where one can find similar membership programs: ground ambulance membership programs, auto club memberships, home and other extended warranties. *Dodrill I,*

---

[9] The Court is hesitant to describe the contract between Air Evac and its members as a "policy" because doing so seems to imply the existence of an insurance policy and, here, the Court does not believe that the contract between Air Evac and its members amounts to an insurance policy. The Court further notes that the parties give little attention to this second factor and the Court has found little to no precedent to assist in its analysis.

No. 2:21-cv-00105, 2021 WL 781679, at *19. In other words, pre-payment of a membership fee that amounts to debt cancellation, or the paying of a pre-determined amount certain for a potential future service, is not limited to the insurance industry. This type of membership plan can be found in a variety of industries that are unaffiliated with and do not fall under the umbrella of the insurance industry. Accordingly, this third factor lends itself—at this early juncture—to a finding that Air Evac's Membership service does not fall under the definition of "the business of insurance" under the MFA.

The natural conclusion that flows from this analysis is that the narrow doctrine of reverse preemption under the MFA is not readily applicable here and does not override the ADA's preemption of HB 2776. For the purpose of this preliminary injunction analysis, the Court reiterates that Plaintiff is not required to prove its case in full but, rather, Plaintiff must make a clear showing that the four *Winter* factors are satisfied. As to this first factor, likelihood of success on the merits, the Court finds that Plaintiff has met its burden in demonstrating that it is likely to succeed on the merits of this case as it cannot, at this juncture, conclude that the MFA shields HB 2776 from ADA preemption. *See University of Texas*, 451 U.S. at 395; *see also Imagine Medispa, LLC*, 999 F. Supp. 2d at 868-69.

## B. Likelihood that Plaintiff Will Suffer Irreparable Harm

If HB 2776 goes into effect as scheduled, the Court believes that Plaintiff is likely to suffer irreparable harm—particularly if, ultimately, the Court later determines that HB 2776 is fully preempted by the ADA or otherwise unenforceable. As noted in *Dodrill I*, "[a]pplication of insurance regulations to Air Evac would subject it to fines and penalties, as well as require the termination of the Membership Program unless and until Air Evac could meet the regulatory

requirements applicable to the insurers in West Virginia." *Dodrill I*, No. 2:21-cv-00105, 2021 WL 781679, at *3. Plaintiff expanded on this notion in its briefs and during oral arguments by stating that if HB 2776 goes into effect as scheduled, then it will suffer irreparable harm as it may be subject to fines; forced to spend time, money, and resources to comply with the new requirements and regulations under HB 2776 that may later be struck down, or may ultimately be forced to close its doors entirely. (ECF No. 5.) This Court also recognizes that "[a]ny interruption in [Air Evac's] ability to offer the program will cause the loss of revenue and damages its relationships with customers, including large county and municipal customers." *Dodrill I*, 2021 WL 781679, at *9. Therefore, the Court finds that Air Evac has sufficiently satisfied the second factor of the preliminary injunction analysis by showing that it is likely to suffer irreparable harm in the absence of preliminary relief.

## C. *Balance of Equities and Public Interest*

Lastly, the final two factors in the preliminary injunction analysis—balance of equities and public interest—tip in Plaintiff's favor. As the Fourth Circuit recognized, Air Evac provides an essential service in West Virginia—"particularly in rural areas, [where] air ambulances can play a vital and life-saving role in responding to medical emergencies." *See Air Evac EMS, Inc. v. Cheatham*, 910 F.3d 751, 757 (4th Cir. 2018). Moreover, to the extent the Membership Program could be halted or dissolved as a direct or indirect result of HB 2776, this could negatively impact the public or individuals who already hold a membership to this program. As *Dodrill I* recognizes, "[c]essation of the program would leave customers who receive transport services by Air Evac or its sister providers to foot the bill"—which is undoubtedly harmful to the public, particularly given

that there is no final ruling or analysis regarding the applicability of ADA preemption and its relation to the MFA in this specific matter.

Issuing a preliminary injunction to prohibit the enforcement of HB 2776 throughout the duration of this lawsuit maintains the status quo and prevents irreparable harm to both Air Evac and the public during the pendency of this lawsuit. *See United States v. South Carolina*, 720 F.3d 518, 524 (4th Cir. 2013) (quoting *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003)). The OIC will not be harmed by a potential delay to the effective date of HB 2776, but if HB 2776 goes into effect on July 9, 2021 and it is later determined that HB 2776 is fully preempted by the ADA—then Plaintiff and the public will be irreparably harmed. Thus, the Court finds that the balance of equities and the public interest both favor preliminary injunctive relief.

### D. Conclusion

After a full analysis of the relevant factors, the Court **GRANTS** Plaintiff's Motion for a Preliminary Injunction. Accordingly, the Court **ORDERS** that Defendant be **ENJOINED** from enforcing the Membership Laws, (HB 2776, to be codified at W. Va. Code § 33-11B-1; W. Va. Code § 33-3-1; and W. Va. Code § 33-44-1 *et seq.*), against Plaintiff Air Evac EMS, Inc. during the pendency of the case.

In light of the Court's findings regarding the absence of any meaningful harm to the Defendant related to this injunction preserving the status quo, as well as the high likelihood that Plaintiff will prevail on the merits, the Court **ORDERS** that the security required by Federal Rule of Civil Procedure 65(c) be set at **ZERO.** *See, e.g., Doe v. Pittsylania*, 842 F. Sup. 2d 927, 937 (W.D. Va. 2012).

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:      July 8, 2021

_____

THOMAS E. JOHNSTON, CHIEF JUDGE