IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

AIR EVAC EMS., INC.,

          Plaintiff,

v.                                               CIVIL ACTION NO.   2:21-cv-00310

ALLAN L. McVEY, in his official capacity
as West Virginia Insurance Commissioner,

          Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiff Air Evac EMS, Inc.'s ("Plaintiff" or "Air Evac") Objections to Order Granting Defendant's Motions to Compel. (ECF No. 85.) For the reasons stated more fully herein, the Court **SUSTAINS IN PART** and **OVERRULES IN PART** Plaintiff's Objections.

I.    BACKGROUND

This civil action involves a dispute between Air Evac and Defendant Allan L. McVey in his official capacity as West Virginia Insurance Commissioner ("Defendant" or "Commissioner McVey") over legislation passed by the West Virginia Legislature purporting to designate Air Evac's "Membership Debt-Cancellation Program" (the "Membership Program") as "insurance" subject to comprehensive licensing, reporting, and other regulatory requirements under West Virginia's insurance code (hereinafter referred to as the "Challenged Legislation").[1] (ECF No. 85 at 4–5.)

---

[1] The Challenged Legislation is House Bill 2776, which was passed during the West Virginia Legislature's 2021

Air Evac opposes the Challenged Legislation, arguing that—as a provider of emergency air ambulance services—it is a federally regulated "air carrier" under the Airline Deregulation Act of 1978 (hereinafter referred to as "ADA") and is protected by the ADA's broad preemption clause.[2] (*Id.* at 4.) Commissioner McVey, however, contends that the legislation is not preempted by the ADA because it "was enacted for the express purpose of regulating 'the business of insurance' as that term is used in the" McCarran-Ferguson Act (hereinafter referred to as "MFA"), which saves state laws regulating the "business of insurance" from inadvertent federal preemption. (ECF No. 88 at 2.) In this regard, Commissioner McVey argues that Air Evac's Membership Program is "insurance," and, therefore, the Challenged Legislation is not subject to preemption under the ADA pursuant to the MFA. (*Id.* at 2–4.) Consequently, the critical, singular issue in this case is whether Air Evac is engaged in "the business of insurance"—as defined in the MFA— through its Membership Program.

   A. *The Membership Program*

Air Evac is an emergency air-ambulance provider that offers emergency transportation and in-flight care to critically ill and injured patients throughout the country, including in West

---

Regular Session. *See* HB 2776, 85th Leg., Reg. Sess. (W. Va. 2021). This legislative enactment is not West Virginia's first attempt to exercise oversight power over Air Evac's Membership Program. *See Air Evac EMS, Inc. v. Dodrill*, 523 F. Supp. 3d 859, 864 (S.D. W. Va. 2021) (hereinafter referred to as "*Dodrill I*"); *Air Evac EMS, Inc. v. Dodrill*, No. 2:21-cv-00310, 2021 WL 2877603, at *3–5 (S.D. W. Va. July 8, 2021) (hereinafter referred to as "*Dodrill II*").

[2] The ADA's preemption clause provides, in pertinent part, that states "may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1). An "air carrier" is defined by the ADA as "a citizen of the United States undertaking by any means, directly or indirectly, to provide air transportation." 49 U.S.C. § 40102(a)(2). "'[A]ir transportation' means . . . interstate air transportation." 49 U.S.C. § 40102(a)(5). The ADA defines "interstate air transportation" as "the transportation of passengers or property by aircraft as a common carrier for compensation. . . ." 49 U.S.C. § 40102(a)(25). Finally, the Fourth Circuit has previously held that air ambulance companies—such as Air Evac—are "common carriers" as defined in the ADA. *See Air Evac EMS, Inc. v. Cheatham*, 910 F.3d 751, 763–64 (4th Cir. 2018).

Virginia.  (ECF No. 1 at 1, ¶ 2.)   In conjunction with three of its sister companies, Air Evac offers a prepaid, discounted Membership Program to both individual West Virginia residents and to West Virginia businesses and municipalities.  (*Id.* at 2, ¶ 4.)  Air Evac describes its Membership Program as a "debt-cancellation agreement"—in exchange for a prepaid membership fee, members are entitled to the cancellation of a portion of the debt owed to Air Evac should the member receive air ambulance services from Air Evac.  (ECF No. 85 at 4.)  Air Evac states that it does not indemnify its members or pay for its members' air ambulance services.  (*Id.*)

    B.  The Discovery Dispute

Discovery has been a critical point of contention between the parties, and the necessary scope of discovery has been disputed since the commencement of this action.  (*Id.* at 4.)  On August 13, 2021, the parties held a Rule 26(f) planning meeting, but were unable to agree on a discovery plan.  (*Id.*)  Thereafter, the parties each submitted their own proposed discovery plan to this Court.  (*Id.*)  At that time, Air Evac proposed to limit the scope of discovery sought by Commissioner McVey to three depositions, fifteen requests for production, fifteen interrogatories, and twenty-five requests for admission.  (*Id.*)  However, on September 3, 2021, this Court entered its Scheduling Order permitting the parties to engage in discovery without any of the limitations proposed by Air Evac.  (ECF No. 33.)

During discovery, Commissioner McVey served two discovery requests on Air Evac that are relevant to Air Evac's Objections.  First, on October 29, 2021, Commissioner McVey issued a Notice of Rule 30(b)(6) Deposition ("Notice of Deposition") to be conducted on December 14 and 15, 2021.  (ECF No. 88 at 5.)  Commissioner McVey's Notice of Deposition set forth twenty-six subject areas that he intended to inquire of the person or persons Air Evac designated to provide

3

testimony. (*Id.*) However, the only subject areas relevant for purposes of resolving Air Evac's Objections are Deposition Topic Nos. 1–5, which relate to the reimbursement Air Evac receives for transportation of individuals—regardless of whether the individual is covered by private health insurance, workers' compensation, Medicaid, or Medicare, and regardless of whether the individual or their insurance provider has a membership agreement with Air Evac. (ECF No. 54 at 6–7.) In its response to Commissioner McVey's Notice of Deposition, Air Evac objected to these topics insofar as they were "overly broad and irrelevant because the specific amount of reimbursement that [it] receives from insurers or anyone else is not relevant to any legal or factual issue in this matter." (*Id.* at 6.)

Second, Commissioner McVey served his First Set of Interrogatories and First Set of Requests for Production of Documents on October 29, 2021 ("First Set of Interrogatories and Requests for Production"). (ECF No. 88 at 6.) Relevant here, Commissioner McVey's Request for Production No. 10 broadly requested—without limitation—that Air Evac produce "all communications with members."[3] (ECF No. 85 at 11.) Air Evac objected to Request for Production No. 10 insofar as it was "unduly burdensome," arguing that it was "not limited in geographic scope or by type of communication," that Air Evac "has over 100 employees or independent contractors, any of whom could communicate with members," and that compliance with Request for Production No. 10 "would present an undue burden on Air Evac and is not proportional to the needs of the case." (ECF No. 56 at 9.)

The parties were unable to reach an agreement concerning the Notice of Deposition, despite Commissioner McVey's good faith efforts to resolve the dispute, and Commissioner

---

[3] Here, Air Evac's Objections—as they relate to Commissioner McVey's Second Motion to Compel—only concern Request for Production No. 10. (ECF No. 85 at 11.)

McVey filed a Motion to Compel Full and Complete Deposition of Witnesses Under Rule 30(b)(6) ("First Motion to Compel") on December 16, 2021. (ECF No. 54.) The parties also failed to resolve their dispute concerning Air Evac's objections to Commissioner McVey's First Set of Interrogatories and First Set of Requests for Production, thereby prompting Commissioner McVey to file his Motion to Compel Full and Complete Responses to First Set of Interrogatories and First Set of Requests for Production ("Second Motion to Compel") on December 29, 2021. (ECF No. 56.)

    C. *Magistrate Judge Tinsley's Discovery Order*

On January 20, 2022, Magistrate Judge Tinsley entered an Order granting both of Commissioner McVey's Motions to Compel in their entirety (hereinafter referred to as the "Discovery Order"). (ECF No. 78.) Magistrate Judge Tinsley found that Commissioner McVey "demonstrated the relevance and proportionality of the information sought" in both motions, and that "Air Evac's unilateral limitations on the scope of discovery in this matter [were] improper." (*Id.* at 6.) Specifically, Magistrate Judge Tinsley found that Commissioner McVey had "demonstrated that the discovery sought [was] relevant to his defense that the Airline Deregulation Act does not preempt" the challenged legislation, that Commissioner McVey had "demonstrated that the discovery sought [was] 'proportional to the needs of the case' pursuant to Rule 26(b)(1) . . . in light of the value of this information to [his] defense," and that Air Evac's objection to the discovery sought was procedurally improper. (*Id.* at 6–7.)

On January 28, 2022, Air Evac filed its Objections to the Discovery Order, claiming two errors. (ECF No. 85.) First, Air Evac objects to the Discovery Order insofar as Magistrate Judge Tinsley granted Commissioner McVey's Second Motion to Compel with regard to Request for

5

Production No. 10—which, again, requested Air Evac to produce "all communications with members." (*Id.* at 2–3.) Second, Air Evac objects to the Discovery Order to the extent it granted Commissioner McVey's First Motion to Compel with regard to Deposition Topic Nos. 1–5, which, as Air Evac describes, sought to elicit testimony about individualized reimbursements (including dollar-and-cent reimbursement figures) it receives for its medical transports throughout the United States for both members and nonmembers over the last five years. (*Id.* at 3–4.) Commissioner McVey timely filed his Response in Opposition to Plaintiff's Objections to Order Granting Defendant's Motions to Compel on February 11, 2022. (ECF No. 88.) On February 18, 2022, Air Evac timely replied. (ECF No. 89.) Accordingly, Air Evac's Objections to the Discovery Order have been fully briefed and are now ripe for adjudication.

## II. LEGAL STANDARD

### A. Objections to Magistrate Judge's Order

Rule 72(a) of the Federal Rules of Civil Procedure provides that an aggrieved party may appeal a non-dispositive order of a magistrate judge to the district court within fourteen (14) days after being served with a copy of the decision. The district court "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). "The clearly erroneous standard applies to factual findings, while legal conclusions will be rejected if they are contrary to law." *Neighborhood Dev. Collaborative v. Murphy*, 233 F.R.D. 436, 438 (D. Md. 2005). Under the clearly erroneous standard, the magistrate judge's findings should not be disturbed unless the court is left with a "definite and firm conviction that a mistake has been committed." *United States v. Wooden*, 693 F.3d 440, 451 (4th Cir. 2012) (citing *Easley v. Cromartie*, 532 U.S. 234, 242 (2001)). However, "[w]hen review of

6

a magistrate judge's order turns on a pure issue of law, the district court's review is 'plenary' and ultimately Rule 72(a)'s 'contrary to law' standard is effectively the same as *de novo* review." *Blankenship v. Brooks Run Mining Co., LLC*, No. 2:14-CV-26268, 2017 WL 1319825, at *1 (S.D. W. Va. Apr. 5, 2017) (citation omitted).

*B. Discovery Standard*

The scope of discovery is governed by Federal Rule of Civil Procedure 26(b)(1), which provides that unless limited by court order:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Courts are to interpret the rules of discovery liberally. *See Herbert v. Lando*, 441 U.S. 153, 177 (1979); *Hickman v. Taylor*, 329 U.S. 495, 501, 507 (1947). In controlling the scope of discovery, "[d]istrict courts enjoy nearly unfettered discretion." *Hinkle v. City of Clarksburg, W. Va.*, 81 F.3d 416, 426 (4th Cir. 1996).

### III. DISCUSSION

As noted above, Air Evac raises two arguments in its Objections to the Discovery Order. First, Air Evac contends that Magistrate Judge Tinsley erred in ordering it to produce "all communications" between any of the 3 million members and any of its over 100 employees or independent contractors. (ECF No. 85 at 11–14.) Second, Air Evac argues that Magistrate Judge Tinsley erred in ordering its designated representative to testify about individualized

reimbursement amounts for air transport throughout the country—both for members and nonmembers. (*Id.* at 14–19.) The Court will address each argument in turn.

### A. Air Evac's Objections Regarding Commissioner McVey's Request for Production No. 10

Air Evac's first objection to the Discovery Order concerns Magistrate Judge Tinsley's order compelling it to serve a full and complete response to Request for Production No. 10, which requests that it provide "all communications with members." (*Id.* at 11.) Air Evac argues that the "enormous burden" of producing all communications between any of its 3 million members and over 100 employees and independent contractors—which it asserts would take "many thousands of hours" to produce—is not likely to produce any relevant evidence about insurance risk transfer. (*Id.* at 11–14.) In this regard, Air Evac notes that the MFA's business-of-insurance exception "depends only on whether a business practice involves the type of risk-pooling, underwriting activity, and indemnification that is characteristic of true insurance." (*Id.* at 11–12.) Air Evac concludes that producing "all communications with members" is not likely to lead to any information relevant to the narrow analysis of whether the Membership Program falls within the MFA's business-of-insurance exception, thereby shielding the Challenged Legislation from preemption. (*Id.* at 12.)

Commissioner McVey contends that all of Air Evac's communications with its members are "relevant and proportional to the needs of the case" because they all purportedly relate to "the risk sharing that takes place in the membership program."[4] (ECF No. 88 at 11.) Commissioner McVey attempts to illustrate the relevance of these communications by providing several "limited"

---

[4] Commissioner McVey does not, and probably cannot, explain how every single communication between Air Evac and its nearly 3 million members relates to "risk sharing," and the Court is certainly skeptical that all of these communications relate to "risk sharing."

8

examples. (*Id.* at 11–12.) First, Commissioner McVey argues that "potential communications with members *regarding reimbursement* are relevant because they represent the risks that are shared through the membership program." (*Id.* at 11) (emphasis added). Second, Commissioner McVey asserts that "[p]otential communications with members *regarding formal and informal collection actions* are relevant and proportional to the needs of the case because they likewise relate to the risk sharing for members." (*Id.* at 11–12) (emphasis added). Third, Commissioner McVey claims that "[p]otential communications with members *regarding payment by third parties* . . . relate to risk sharing." (*Id.* at 12) (emphasis added). Finally, Commissioner McVey avers that "[p]otential communications *regarding complaints for services rendered to members* relate to risk sharing." (*Id.*) (emphasis added).

While the examples listed by Commissioner McVey may potentially relate to relevant information for purposes of the MFA's business-of-insurance exception analysis, Request for Production No. 10 is not limited in the same manner as any of the examples cited by Commissioner McVey. Each example listed by Commissioner McVey is conveniently limited by language that is not contained in Request for Production No. 10—"communications with members *regarding reimbursement*;" "communications with members *regarding formal and informal collection actions*;" "communications with members *regarding payment by third parties*;" and "communications with members *regarding complaints for services rendered*." By comparison, Request for Production No. 10 sweepingly requests—without any limitation—"*all communications* with members." The Court agrees with Air Evac that such a disproportionate request for millions of pages of member communications is unlikely to result in even a marginal

9

benefit to the MFA's business-of-insurance exception analysis when compared with the burden placed on Air Evac to produce such communications.

Commissioner McVey also argues that Air Evac has failed to demonstrate that Request for Production No. 10 is unduly burdensome. The Court's determination of whether a discovery request is unduly burdensome or oppressive involves a balancing of the burden on the party subject to the request against the benefit of the information to the party seeking discovery. Fed. R. Civ. P. 26(b)(2). The burden of demonstrating that discovery sought is unduly burdensome rests with the party resisting discovery. *Jones v. Bank of America, N.A.*, Civil Action No.: 3:14-CV-11531, 2015 WL 1808916, at *2 (S.D. W. Va. Apr. 21, 2015) (citing *Convertino v. U.S. Dep't Just.*, 565 F. Supp. 2d 10, 14 (D.D.C. 2008) (noting that courts "only entertain[] an unduly burdensome objection when the responding party demonstrates how [discovery of] the document is 'overly broad, burdensome, or oppressive, by submitting affidavits or offering evidence which reveals the nature of the burden.'")).

In support of its Response in Opposition to Commissioner McVey's Second Motion to Compel, Air Evac attached the Declaration of Melinda Pliler—an Air Evac Employee—offering a detailed explanation of the process by which Air Evac would have to undergo to comply with Request for Production No. 10, and stating that compliance with Request of Production No. 10 "for West Virginia members alone would easily take over 1,000 hours" and would take "many thousands of hours" for all communications nationwide. (ECF No. 75-1, Exh. E.) Commissioner McVey summarily argues that this Declaration is "self-serving," "conclusory," and "does not meet the burden of demonstrating undue burden." (ECF No. 88 at 12.) However, it is clear from the Declaration that producing all communications with its nearly 3 million members

10

would require Air Evac to expend thousands of hours, as well as hundreds of thousands of dollars. Moreover, as discussed above, the benefit Commissioner McVey would receive from the production of all of Air Evac's communications with members is marginal when contrasted with the efforts required to produce them.

Therefore, because Request for Production No. 10 seeks *all* communications between Air Evac and its members—without any limitation whatsoever—and because the enormous burden of producing such communications, in light of the nearly 3 million members Air Evac serves nationwide, is disproportionate to the marginal benefit obtained by the Commissioner, the Court finds that Magistrate Judge Tinsley erred in ordering Air Evac to provide a full and complete response to Request for Production No. 10. Accordingly, Air Evac's Objection is **SUSTAINED** to the extent it objects to Request for Production No. 10.

### B. Air Evac's Objections Regarding Commissioner McVey's Rule 30(b)(6) Notice of Deposition

Air Evac's second objection to the Discovery Order concerns Magistrate Judge Tinsley's order compelling it to produce a 30(b)(6) witness to testify as to the disputed deposition topics identified by Commissioner McVey in his First Motion to Compel. (ECF No. 85 at 14.) Air Evac bases its second objection on two grounds. First, Air Evac argues that Magistrate Judge Tinsley erred in ruling that its objection to the discovery sought in Commissioner McVey's Notice of Deposition was procedurally improper because it properly notified Commissioner McVey of its objections and none of the procedural rules require a motion for a protective order where the party seeking discovery preemptively files a motion to compel before depositions are taken. (*Id.* at 14–16.) Second, Air Evac contends that Magistrate Judge Tinsley improperly relied on the importance of "risk-transfer" for the MFA's business-of-insurance analysis in granting

11

Commissioner McVey's First Motion to Compel. (*Id.* at 17–19.) However, as explained below, the Court need not address Air Evac's argument concerning the Discovery Order's procedural holding because the Court agrees with Magistrate Judge Tinsley that Commissioner McVey has demonstrated that the deposition topics listed in his Notice of Deposition are relevant and proportional to the needs of the case.

"Risk sharing" is unmistakably pertinent to the central issue in this case, and the parties recognize it as such. Indeed, the Supreme Court of the United States has articulated "three criteria relevant in determining whether a particular practice is part of the 'business of insurance'" to guide courts in determining whether the MFA's reverse preemption is applicable to a particular state law. *See Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 128 (1982) (addressing the MFA provision that is applicable to antitrust laws). Relevant here—given the parties' dispute as to whether the discovery sought is indicative of whether the Membership Program involves "risk sharing"—the first criteria requires the Court to examine "whether the practice has the effect of transferring or spreading policyholder risk." *Id.*

In the Discovery Order, Magistrate Judge Tinsley found that "discovery regarding non-membership transports outside of West Virginia [would] provide[] needed context and bear[] on the ultimate issue of whether Air Evac's Membership Program rises to the level of 'insurance.'" (ECF No. 78 at 6–7.) Moreover, Magistrate Judge Tinsley found that the "discovery sought [was] 'proportional to the needs of the case' . . . in light of the value of this information to [Commissioner McVey's] defense" because a comparison of Air Evac's treatment of non-membership and membership transports could aid the Court in determining "whether the Membership Agreements have 'the effect of transferring or spreading policyholder risk[.]'" (*Id.* at 7.)

In its Objections to the Discovery Order, Air Evac maintains that the MFA "business-of-insurance" analysis "focuses on traditional insurance risk-transfer practices, such as insurance underwriting, actuarial analysis, indemnification and the like," and argues that "the sensitive individual reimbursement amounts that [it] receives—especially for services rendered to *nonmembers outside of West Virginia*—says nothing about whether [its] debt-cancellation agreements are 'insurance' subject to Defendant's putative regulatory authority in [West Virginia]." (ECF No. 85 at 17, 19) (emphasis in original).

Commissioner McVey contends that "Magistrate Judge Tinsley properly ordered Air Evac's designated representative to testify about individualized reimbursement amounts for air transports throughout the country"[5] because such information will enable him to demonstrate to

---

[5] Commissioner McVey denotes the following topics about which he seeks to inquire of Air Evac's designated representative:

- (a) The reimbursement that Air Evac receives for transportation of members who are covered by health and/or workers compensation insurance (individually and collectively) and (b) the reimbursement that Air Evac receives when it transports individuals who are not covered by health and/or workers compensation insurance (individually and collectively), because (c) the difference between those numbers on an individual and collective basis represents the risks that are shared through the membership program.

- (a) The reimbursement that Air Evac receives for transportation of members who are covered by Medicaid and/or Medicare (individually and collectively) and (b) the reimbursement that Air Evac receives when it transports individuals who are not covered by Medicaid and/or Medicare (individually and collectively), because (c) the difference between those numbers on an individual and collective basis represents the risks that are shared through the membership program.

- The reimbursement that Air Evac receives from transporting individuals who are not members and who do not have any of these forms of insurance, because this information will allow the Defendant to determine whether and how much the membership program provides funds that Air Evac uses to share risk among members and non-members.

- The overall amount of money that Air Evac receives on an annual basis from membership agreements and the total amount of the benefits provided by the membership agreement through transportation of members, as well as Air Evac's determination of the total overhead in and profit earned from the membership program. This information is relevant to demonstrate the difference between the Air Evac membership program and the prepaid service arrangements, such as car wash services, referred to by the Court in the preliminary injunction order.

13

the Court that Air Evac's Membership Program engages in a sufficient amount of risk sharing—which he characterizes as the risk of an individual having to pay the difference between Air Evac's service charge and the reimbursement amount from the individual's insurance benefits or from a responsible third party.[6]

The Court agrees with Magistrate Judge Tinsley and Commissioner McVey that the information sought in Deposition Topic Nos. 1–5 are both relevant and proportional to the needs of this case, and are therefore discoverable. While it is unclear whether the discovery sought by Commissioner McVey will ultimately be determinative of whether Air Evac's Membership Program is engaged in sufficient risk sharing such that it constitutes "insurance" for purposes of the MFA's "business-of-insurance" exception, the discovery sought by Commissioner McVey is certainly relevant under Rule 26(b)(1).[7]

The parties seem to agree that at least *some* risk sharing is involved in Air Evac's Membership Program, and the Court has previously found as such in its prior Memorandum Opinion and Order granting Air Evac's Motion for Preliminary Injunction. (ECF No. 19 at 19) (finding that the Membership Program "inherently involves risk for both Air Evac and the member of the Membership Program"). To be sure, Air Evac concedes that "[v]irtually every decision a business makes is about managing risk in some sense," but also correctly notes, as this Court

---

[6] Commissioner McVey states that the benefit of enrollment in Air Evac's Membership Program is Air Evac's promise "to provide service to a member in return for . . . only the right to attempt to obtain reimbursement for that service from the member's insurance benefits or a responsible third party, and not to require the member to pay the difference between Air Evac's charge and the reimbursement amount." (ECF No. 88 at 16.)

[7] Rule 26(b)(1) makes clear that the test for relevancy as it relates to discovery is necessarily broader than relevancy for purposes of admissibility at trial. *See* Fed. R. Civ. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable."). Evidence is relevant under the Federal Rules of Evidence if (a) "it has any tendency to make a fact more or less probable than it would be without the evidence;" and (b) "the fact is of consequence in determining the action." Fed. R. Evidence 401.

14

previously has, that not every business risk is the type of risk that matters for the MFA's "business-of-insurance" exception. (ECF No. 85 at 11) (*citing Dodrill II*, 2021 WL 2877603, at *10). However, the Court need not determine at this stage of the proceedings whether the risk management practices engaged in by Air Evac through its Membership Program are, in fact, the type of risk that is characteristic of actual insurance. As stated several times herein, that is the singular, critical, and ultimately dispositive question in this case.

It is sufficient for purposes of Rule 26(b)(1)'s relevancy test that the deposition topics relating to the individualized and collective reimbursement rates for both non-member and member transports nationwide could enable Commissioner McVey to demonstrate that Air Evac is engaged in the business of insurance through its Membership Program. Whether or not the information obtained by Commissioner McVey through his inquiry of those deposition topics actually demonstrates that Air Evac's Membership Program is "insurance" is a question for this Court to decide at the summary judgment stage or at trial.

Therefore, the Court agrees with Judge Tinsley that the five deposition topics enumerated in Commissioner McVey's Notice of Deposition relating to the reimbursement rates for non-member and member transports nationwide are both relevant and proportional to the needs of the case. Accordingly, the Court **OVERRULES** Air Evac's Objections to the Discovery Order to the extent it was compelled to produce a 30(b)(6) witness to testify regarding the five deposition topics discussed above concerning individualized and collective reimbursement rates for medical transports throughout the United States for both members and nonmembers.

### IV. CONCLUSION

For the reasons explained in greater detail above, the Court **SUSTAINS IN PART** Plaintiff's Objections, (ECF No. 85), to the Discovery Order, (ECF No. 78), insofar as Plaintiff was ordered to provide full and complete responses to Defendant's Request for Production No. 10, and **OVERRULES IN PART** Plaintiff's Objections to the Discovery Order insofar as Plaintiff was compelled to produce a witness to be deposed on the areas of inquiry delineated in Defendant's Notice of Deposition.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: May 24, 2022

THOMAS E. JOHNSTON, CHIEF JUDGE